UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MASSACHUSETTS NURSES ASSOCIATION, Plaintiff, | ) ) ) ) ) |
| v. | ) ) |
| NORTH ADAMS REGIONAL HOSPITAL, Defendant. | ) ) ) ) ) |

Civil Action No. 05-30145-MAP

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Defendant North Adams Regional Hospital ("Defendant" or the "Hospital")

hereby submits this Memorandum of Law in Support of its Motion For Judgment on the

Pleadings or, in the Alternative, for Summary Judgment.

### INTRODUCTION

Plaintiff's one-count Complaint, an action to confirm a labor arbitration award

under the Labor Management Relations Act, 29 U.S.C. § 185, represents an inappropriate

attempt to circumvent the grievance and arbitration process prescribed by both the

parties' collective bargaining agreement and settled federal law. Rather than avail itself

of contractually mandated procedures for the resolution of disputes regarding nurse

staffing (and related workplace matters) at the Hospital, Plaintiff Massachusetts Nurses

Association ("Plaintiff" or the "MNA") seeks to enlist this Court to subvert established

arbitral remedies that have been collectively bargained by the parties. In their place, and

in violation of well settled principles of federal labor law and policy, Plaintiff would

substitute ordinary contract grievances masquerading as civil contempt proceedings, and

at once burden the Court with disputes that should be resolved in arbitration and do unnecessary violence to the delicately balanced labor relations between union and management at a small hospital. Such a course is plainly improper, and should be rejected.

The pleadings in this case make clear that there is no reason for the Court to become involved in this matter at the present time, for the simple reason that there is no concrete dispute between the parties with respect to the arbitration award at issue. By Plaintiff's own admission, the Hospital has not to date, and does not now, contest the validity of the award issued by Arbitrator Stutz. Defendant is in full compliance with that award, and has every intention of so remaining. In the face of these undisputed facts, Plaintiff nonetheless asks the Court to issue a "confirmation" of the Arbitrator's award. Its purpose in doing is all too apparent: The MNA seeks to releverage its position under the parties' collective bargaining agreement, subjecting the Hospital to the risks and burdens of federal litigation for what are in substance routine grievances. If the Arbitrator's award is so confirmed, Defendant believes that the MNA will file an application with this Court (seeking injunctive and contempt remedies) each and every time that it contends the Hospital has acted in a manner inconsistent with the collective bargaining agreement in respect to nurse staffing. This will place the Court on the front lines of workplace disputes between parties to a union contract, in the role of "super-arbitrator," contrary to the express terms of the contract itself and the primacy of grievance arbitration as the preferred method for conflict resolution in the labor sector.

As discussed more fully below, under Derwin v. General Dynamics Corp., 719 F.2d 484 (1st Cir. 1983), federal labor policy and the prudential values and concern for

judicial economy reflected in Article III of the United States Constitution foreclose the civil relief that Plaintiff seeks in this lawsuit. For the reasons which follow, the Hospital respectfully requests that judgment be entered in its favor, and that the Complaint be dismissed in its entirety.

## STATEMENT OF FACTS

This case (and the arbitration award that spawns it) arise out of a dispute concerning the level of nurse staffing assigned to the Hospital's Medical Surgical unit on certain occasions during calendar year 2002. The MNA and the Hospital are parties to a collective bargaining agreement (the "CBA" or the "Agreement"), which contains provisions for the adjustment of grievances and the arbitration of disputes. (Compl. ¶ 5.)[1] Article 19.02 of the CBA defines a grievance as "a complaint or dispute between the Hospital and the Association pertaining to the interpretation of, application of, or compliance with, provisions of this Agreement," and sets forth a series of steps for the adjustment of such disputes that culminate in the submission of the matter to binding arbitration. (See Verified Answer, Exhs. 1 & 2.)

Article 18.07(D) of the CBA, the contract provision at issue in the subject arbitration award, provides that the "Hospital will only keep and admit the number of patients that registered nurses can safely care for," and that the "Hospital will take

---

[1] The current CBA is in effect by its own terms from April 1, 2004 to March 31, 2007. The predecessor Agreement between the parties, which governed the 2002 grievances at issue in the Arbitrator's award, was in effect from April 1, 2001 to March 31, 2004. For purposes of the present action, there are no material differences between the pertinent provisions of the two contracts. Copies of both collective bargaining agreements are appended to the Hospital's Verified Answer as Exhibits 1 & 2. Because the CBAs are integral to Plaintiff's claim in the Complaint and are expressly referred to therein (see, e.g., Compl. ¶ 5), this Court may consider them in the present Rule 12 motion. See Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001) ("When the complaint relies upon a document, whose authenticity is not challenged, such a document merges into the pleadings and the court may properly consider it under a Rule 12(b)(6) motion to dismiss.") (internal quotation marks omitted).

measures such as adding nurses, stopping admissions or other measures to ensure that this occurs." (See Verified Answer, Exhs. 1 & 2.) Between May 6, 2002 and June 2, 2002, certain Registered Nurses ("RNs") employed by Defendant filed approximately nine "Unsafe Staffing Reports" regarding the level of staffing in the Hospital's Medical Surgical unit. (Compl. ¶ 8.) These reports were eventually converted into grievances, which alleged violations of Article 18.07(D) of the Agreement, and were subsequently arbitrated before Arbitrator Michael W. Stutz (the "Arbitrator"). (Id. ¶ 9.) The parties stipulated that the issues to be decided by the Arbitrator were whether the Hospital had violated the CBA in respect to the level of staffing on the Medical Surgical unit (as alleged in the MNA's nine grievances) and, if so, what the remedy should be for any such violations. (Id. ¶ 10.) On February 21, 2005, the Arbitrator issued his Opinion and Award (the "Award"), in which he concluded that the Hospital had violated the CBA with respect to the level of staffing on the Medical Surgical unit as alleged in the grievances. (Id. ¶ 11; Compl., Exh. A.) As remedies for these violations, the Arbitrator ordered the Hospital to (1) cease and desist violating Article 18.07 of the CBA; (2) pay the MNA an amount of money equal to the pay of one RN for each of the nine shifts grieved; and (3) pay the RNs who actually worked the nine shifts in issue time and one-half of their regular rate of compensation for those shifts. (Compl. ¶ 13.)

Following this Award, the Hospital paid both the MNA and the RNs the monetary amounts ordered by the Arbitrator.[2] Further, as Plaintiff concedes, the Hospital has not

---

[2] In its Complaint, Plaintiff admits that Defendant has complied with the Award with respect to the ordered payment to the RNs. (Compl. ¶ 14.) Plaintiff alleges, however, that Defendant has not paid any money to the MNA as ordered in the Award. (Id.) In its Verified Answer, however, Defendant has denied this allegation and produced true and unimpeachable documentation establishing that the Hospital has in fact paid the MNA all of the money ordered by the Arbitrator. (Verified Answer ¶ 14 & Exh. 3.) This matter is not in genuine dispute.

sought to vacate or modify the Arbitrator's Award, or taken any other action to challenge its validity. (Compl. ¶ 15.) Finally, since 2002, the Hospital has substantially increased staffing levels at its facility, and has developed new systems for managing patient needs and nurse workloads. (Compl. Exh. A, at 18.) In his Award, the Arbitrator recognized as much, acknowledging that, since the time of the 2002 grievances, the Hospital had increased the patient care hours used to determine its staffing cohort from 5.5 to 6.2. (Id.) In addition, a 32-hour registered nurse and a 24-hour registered nurse were added to the Hospital's day shift, and a 24-hour registered nurse was added to its evening shift. (Id.) Furthermore, the Hospital responded to the Arbitrator's Award by assembling a committee to develop a system for identifying patient acuity to be used in staffing decisions. (Id.)

Plaintiff alleges that, following issuance of the Award – specifically, between March 2 and April 22, 2005 – certain RNs employed by the Hospital have filed "Unsafe Staffing Reports" alleging new violations of Article 18.07 of the CBA. (Compl. ¶ 16.) Although Plaintiff does not provide any specific detail in the Complaint regarding these reports, the MNA has made clear (both through published statements to the media and in information posted on its website) that most, if not all, of these recent reports concern the level of staffing in areas of the Hospital *other than* the Medical Surgical unit, the unit at issue in the Arbitrator's Award.[3] In addition, and as discussed in more detail below, it

---

[3] Copies of an article from the North Adams Transcript dated June 22, 2005 and an article on the MNA's own website are attached hereto as Exhibits 1 & 2. Consideration of these materials should not require the conversion of Defendant's Rule 12(c) motion into a motion for summary judgment. See Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30 (1st Cir. 2001) (holding that documents whose authenticity is not disputed by the parties may be considered in a motion to dismiss without converting the motion to one for summary judgment).

appears that a number of these internal reports raise issues completely unrelated to those submitted to, and decided by, Arbitrator Stutz in his Award. (Exhs. 1 & 2)

## ARGUMENT

## I. PLAINTIFF'S COMPLAINT MUST BE DISMISSED FOR ITS FAILURE TO ALLEGE A JUSTICIABLE DISPUTE BETWEEN THE PARTIES

Plaintiff's Complaint must be dismissed in its entirety for the simple reason that it fails to allege a concrete, justiciable dispute between the parties. In Derwin v. General Dynamics, 719 F.2d 484 (1st Cir. 1983), a case that is virtually identical to the present action, a dispute arose between parties to a collective bargaining agreement regarding the issuance of off-the-job passes to union employees to investigate grievances. The dispute was arbitrated pursuant to the terms of the parties' labor contract, and an arbitral award against the employer issued. Neither party challenged the award. As in the case at bar, the union later sought to confirm the award, because it believed that the employer was refusing to issue off-the-job passes for reasons declared improper under the arbitrator's ruling. The company, on the other hand, claimed that it was adhering fully to the award. In opposing the union's action to confirm, the employer argued that "the union's desire to obtain a 'paper' confirmation of the [arbitrator's] award [was] a first step in a clever ploy to subvert the arbitral process." (Id. at 490.) The company asserted that if the court acted to confirm the award, "the union will come to the court later with a host of grievances involving off-the-job passes, presenting incidents as acts of contempt in violation of the order of confirmation." (Id.) The company maintained that this procedure would compel the court to adjudicate future disputes that should in fact be resolved through the contract's ordinary grievance procedure. (Id.)

In affirming the denial of the union's application to confirm the arbitral award, the First Circuit agreed with the employer and held that Article III's prudential concerns for judicial economy "strongly counsel against the entry of a confirmatory award" in the absence of any current dispute over the award's effect. Derwin, 719 F.2d at 492. In reaching its conclusion, the Court noted that "[b]oth parties profess to agree that the Stutz[4] award is binding." (Id. at 492.) The parties disagreed, however, over whether the company was in fact complying with the arbitrator's award. Holding for the employer, the Court of Appeals began by observing that disputes concerning a party's claimed non-compliance with an arbitral award are ordinarily resolved by arbitration, and not by resort to the courts. The Court explained that the danger of confirming an arbitral award in the absence of a dispute over the validity of that award is that "an order of confirmation issued in a factual vacuum may result in unpredictable pressure and aspersions upon the party against whom the order runs," and that such confirmation "may be taken to imply that the defendant is in fact violating it." (Id. at 491-92.) To grant such a requested confirmation "would risk injecting the courts improperly into the arbitration process, since absent a concrete dispute there is no way for the district court to know whether there is any matter which it can properly review and its order may merely serve to skew the bargaining balance between the parties." (Id. at 492.) The First Circuit thus held that "the union's action to confirm should be dismissed." (Id. at 493.)

Derwin clearly lights the path to wisdom in the case at bar. In the present case, there is no dispute that the Arbitrator's Award is binding on the parties. Plaintiff admits that the Hospital has not sought to challenge the Award, and indeed the time for such a

---

[4] In a curious coincidence, the arbitrator involved in the Derwin case was Robert Stutz, the father of the arbitrator involved in the present matter.

challenge has expired. (Compl. ¶ 15.) Likewise, as in <u>Derwin</u>, there is no concrete
dispute between the parties, and the MNA is thus asking this Court to "put its
imprimatur" on Mr. Stutz's Award in a contextual vacuum. <u>See</u> <u>Derwin</u>, 719 F.2d at 491;
<u>see also</u> <u>Local 2414 of United Mine Workers of America</u> v. <u>Consolidation Coal Co.</u>, 682
F. Supp. 399, 400 (S.D. Ill. 1988) (holding that to confirm an award there "must first be
an underlying dispute regarding [the award's] validity or application"). As the First
Circuit has recognized, Article III's "prudential values and concerns for judicial
economy" counsel strongly against merely confirmatory orders. <u>See</u> <u>Derwin</u>, 719 F.2d at
491-92; <u>see also</u> <u>International Brotherhood of Firemen & Oilers, Local 330</u> v. <u>Georgia-
Pacific Corp.</u>, 1989 WL 139220, at *6 (D. Me. 1989) (declaring that the prudential values
of Article III "militate against the ministerial confirmation of an arbitration award").

Should this Court confirm and enforce Mr. Stutz's arbitration order, Defendant
believes, just as the employer did in <u>Derwin</u>, that the MNA will return to the Court
seeking a contempt ruling any time it thinks that the Hospital is in violation of Article
18.07 of the CBA, regardless of how tangentially related such claimed violations may be
to the factual circumstances at issue in the Arbitrator's Award. In fact, the MNA has
declared as much in reported statements made to the media regarding the instant case. In
an article appearing in the <u>North Adams Transcript</u> on June 22, 2005, David Schildmeier,
a spokesman for the MNA, is quoted as saying that the present lawsuit tells the Hospital
that, "You need to adhere to this arbitrator's ruling or be subject to contempt of court."
(Exh. 1.) As a result, there is a very real likelihood that this Court will be called upon to
adjudicate new disputes that should in fact be resolved through the negotiated grievance
and arbitration process. Should this occur, the Court would be substituted for the first

step of the parties' contractual grievance procedure, and the MNA would thereby deprive the Hospital of a fundamental benefit of its bargain. The First Circuit has made clear, in a case directly on point, that Article III of the U.S. Constitution prohibits such a result. See Derwin, 719 F.2d at 491-93.

## II.    PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED BECAUSE IT REPRESENTS AN IMPROPER ATTEMPT TO BYPASS THE NEGOTIATED GRIEVANCE AND ARBITRATION PROCEDURES CONTAINED IN THE PARTIES' COLLECTIVE BARGAINING AGREEMENT

The Complaint should be dismissed in its entirety for the independently sufficient reason that it represents an improper attempt to bypass the governing grievance and arbitration procedures contained in the CBA. It is well settled that where parties have committed to arbitrate disputes over the meaning and application of their collective bargaining agreements, federal labor policy significantly restricts the role of the courts. See Derwin, 719 F.2d at 491, citing United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593 (1960); Boston Shipping Ass'n, Inc. v. International Longshoremen's Ass'n, 659 F.2d 1, 3 (1st Cir. 1981); Local 2222, IBEW v. New England Tel. & Tel. Co., 628 F.2d 644, 647 (1st Cir. 1980). In recognition of that limited role, courts routinely decline to rule that an arbitrator's award is binding in a later, even factually similar context, reasoning that the precedential effect to be accorded to a past award is a matter for an arbitrator to decide. Derwin, 719 F.2d at 491 (collecting cases). Likewise, courts have "carefully scrutinized suits to 'enforce' past awards where the facts suggest that the nominal enforcement proceeding is, in truth, an attempt to extend the award to a new, previously unresolved dispute." Id. A similar suspicion should attach to the MNA's present confirmation action.

In Derwin, the First Circuit recognized that "[o]rdinarily, disputes involving the meaning and application of prior arbitral labor awards are themselves the proper subject for arbitration." Id., 719 F.2d at 491. "Only where an arbitral award is both clearly intended to have a prospective effect and there is no colorable basis for denying the applicability of the existing award to a dispute at hand, will a court order compliance with the award rather than require the parties to proceed anew through the contract grievance procedure." Id. at 491 (citing cases). The Derwin Court further explained that, "unless it is beyond argument that there is no material factual difference between the new dispute and the one decided in the prior arbitration that would justify an arbitrator's reaching a different conclusion, the case must go to fresh arbitration rather than to the court for judicial enforcement." Id. Such is the case with the MNA's confirmation claim here, an action the union has brought with no specification of any particular contract breaches by the Hospital.

In reaching its conclusion in Derwin, the First Circuit cited extensively to the prevailing views of courts in other jurisdictions. For example, in United Paperworkers, Local 675 v. Westvaco Corp., 461 F. Supp. 1022 (W.D. Va. 1978), an arbitrator directed an employer to reexamine its seniority practices with respect to certain jobs. When a dispute arose as to the result of that reexamination and a civil action was commenced to enforce the arbitral order, the district court held that the collective bargaining agreement's grievance procedure was the proper mode for resolving the conflict. Id. at 1023; see also District 50, United Mine Workers of America v. Revere Copper & Brass Inc., 204 F. Supp. 349 (D. Md. 1962) (denying enforcement of arbitral award that set forth general rules for application by parties, and holding that disputes regarding the

interpretation or application of such an award had to be resolved through the parties'
bargained-for grievance and arbitration process).

Courts have since relied upon Derwin and its reasoning to deny requests to
confirm arbitration awards in factually analogous contexts. For example, in Local Union
No. 4343 of United Mine Workers of America v. Old Ben Coal Co., 762 F. Supp. 251,
254 (S.D. Ind. 1991), the court rejected a union's confirmation claim and cautioned that
"district courts must be careful when exercising this authority [to confirm arbitration
awards], so as to avoid interfering with the arbitration process." The court in Local 2414
of United Mine Workers of America v. Consolidation Coal Co., 682 F. Supp. 399, 400
(S.D. Ill. 1988), reached a similar result, noting that "it is apparent that Congress did not
intend for district courts to make unwarranted judicial intrusions into the arbitration
process," and that "to confirm these awards in the absence of any concrete dispute would
merely serve to circumvent Congress's goal of eliminating the cost and complexity of
litigation from labor disputes." See also Union de Trabajadores Petroquimicos v. Union
Carbide Caribe, Inc., 628 F. Supp. 99, 102 (D.P.R. 1986) (denying petition to enforce
arbitration award and declaring that "disputes arising from the application or
implementation of [an arbitrator's] award . . . are viewed as raising new grievances under
the collective bargaining agreement upon which the arbitrator has not ruled, and must be
submitted to arbitration through the grievance mechanism of the collective bargaining
agreement"); Massachusetts Correction Officers Federated Union v. Commissioner of
Correction, 793 N.E.2d 1248, 1251, 58 Mass. App. Ct. 832, 835 (Mass. App. Ct. 2003)
(denying confirmation of arbitration award under Derwin, and concluding that an
arbitrator's cease and desist order does "little more than require the [company] to comply

with the terms of its contract, the interpretation of which under the agreement is reserved

to the grievance and arbitration process"); Yellow Freight Sys., Inc. v. Local Union 710,

Internat'l Brotherhood of Teamsters, AFL-CIO, 1994 WL 665086, at *2 (N.D. Ill. 1994)

(adopting Derwin and its reasoning to deny confirmation of arbitral award under LMRA

where there was no evidence of either party's refusal to comply with award);

International Brotherhood of Firemen & Oilers, Local 330 v. Georgia-Pacific Corp., 1989

WL 139220, at *5 (D. Me. 1989) (denying union's action to confirm arbitration award

per Derwin, concluding that confirmation is "neither necessary nor appropriate" where

company has complied with award); Evans v. Tenneco Oil Co., 1986 WL 14174, at *4

(E.D. La. 1986) (dismissing action seeking enforcement of arbitration award, where

award did not cover existing dispute and plaintiff had not grieved such dispute under the

collective bargaining agreement).

    The MNA contends that the Arbitrator's Award in this case should be confirmed,

because the Hospital is violating its cease and desist order by continuing to breach Article

18.07 of the CBA. The MNA's contention is both factually false and misplaced as a

matter of law. In point of fact, the Hospital is in full compliance with the Arbitrator's

Award. The Hospital has made the required payments to the RNs and to the MNA, and

has adhered to the terms of the Arbitrator's ruling in respect to the staffing of nurses on

the Medical Surgical unit. To the extent the parties disagree about what the Award

means or requires, and/or whether any particular aspect of Hospital staffing violates the

CBA or the Award, such disputes are subject to the grievance and arbitration procedures

of the CBA and are not properly before this Court in the first instance. See Derwin, 719

F.2d at 493 ("ambiguities in an arbitration award are ordinarily to be determined by

arbitration, not by resort to the courts"); Union de Trabajadores Petroquimicos, 628 F.
Supp. at 102 (interpretation of arbitral award is for an arbitrator and not the court).

As set forth ante, the MNA and the Hospital are parties to a collective bargaining
agreement which contains provisions for the adjustment of grievances and the arbitration
of disputes. (Compl. ¶ 6; Verified Answer ¶ 6.) Article 19.02 of the CBA defines a
grievance as "a complaint or dispute between the Hospital and the Association pertaining
to the interpretation of, application of, or compliance with, provisions of this
Agreement," and sets forth the steps of a grievance procedure that culminate in binding
arbitration. (Verified Answer Exhs. 1 & 2.) It is this procedure that the MNA's present
civil action seeks to circumvent, and it is this procedure to which the Court should defer.

An examination of the parties' dispute in this case makes clear why the principles
of Derwin dictate that Plaintiff's confirmation action be dismissed. Article 18.07(D) of
the CBA provides that the "Hospital will only keep and admit the number of patients that
registered nurses can safely care for," and that the "Hospital will take measures such as
adding nurses, stopping admissions or other measures to ensure this occurs." (Id. at
Exhs. 1 & 2.) In concluding that Defendant violated Article 18.07(D) of the CBA, the
Arbitrator found that, in 2002, the Hospital had not set up a system to "administer
staffing, patient load and [patient] acuity in a manner that assures nurses that they will not
be forced to work under dangerously overloaded conditions." (Compl. Exh. A, at 25.)
The Arbitrator thus found that the Hospital would need to alter the manner in which it
administered its nurse staffing to comply with Article 18.07(D), and noted that the
Hospital had numerous tools available to it to accomplish this, including adding staff,
capping admissions, and transferring patients out of the facility. (Id.) Indeed, since 2002

(when the grievances at issue in the subject arbitration were filed), the Hospital has substantially increased staffing levels at its facility and has developed new systems for managing both patient needs and nurse workloads. (Id. at 18.) The Arbitrator appeared to recognize as much in his Award, observing that the system he described "should now be in place," and declining to order the hiring of more nurses "to remedy something that transpired nearly three years ago that may not be continuing today." (Id. at 24, 29.)

Based upon the allegations of the Complaint, it appears that Plaintiff disagrees with the Hospital's interpretation of and response to the Award. Specifically, the MNA maintains that, following the Arbitrator's Award – between March 2 and April 22, 2005 – certain RNs employed by the Hospital have filed "Unsafe Staffing Reports" alleging new violations of Article 18.07. (Compl. ¶ 16.) Under Derwin, however, these reports must be grieved and arbitrated unless it is "beyond argument that there is no material factual difference between the new dispute and the one decided in the prior arbitration." Derwin, 719 F.2d at 491; see also Boston Shipping Ass'n, 659 F.2d at 4 (stating that "if there is an arguable material difference, the dispute is for the arbitrator"); Local Union No. 4343 of United Mine Workers of America, 762 F. Supp. at 254 (noting that facts must be "substantially identical" before a federal court can entertain prospective enforcement of an arbitral award, and requiring that company's conduct constitute "willful and persistent disregard" of the award before court will intervene).

The Derwin test has plainly not been satisfied here. Far from being "beyond argument" that there are no material factual differences between the current circumstances and those addressed by the Arbitrator's Award, it is beyond serious argument that there are many such differences. Although Plaintiff provides no details

whatsoever regarding the "Unsafe Staffing Reports" referred to in the Complaint, the MNA has discussed these reports with the media and in an article on its website. (Exhs. 1 & 2.) According to the MNA, most, if not all, of these recent reports concern the level of staffing in areas of the Hospital *other than* the Medical Surgical unit, the area at issue in the Arbitrator's Award. (Id.) Given the factual variations in patient census, acuity, and staffing levels that obtain in different treatment areas of the Hospital, the claims being advanced by the MNA cannot possibly be deemed to be identical to the three-year-old grievances decided by Arbitrator Stutz.[5] In addition, it appears that at least some of these reports allege grievances completely unrelated to those submitted to and decided by the Arbitrator Stutz. (Id. at Exh. 2.) For example, the article on the MNA's website describes a claimed occurrence involving a nurse who was transferred to a unit to monitor a patient "undergoing a very specialized procedure for which she had no orientation, no experience, and with no hospital policy to provide her with any guidance." (Id.) Plainly, an allegation that the Hospital assigned a patient to a nurse who was not properly oriented to deliver the care required extends well beyond the staffing level disputes that were the subject of Arbitrator Stutz's Award. In short, it is beyond question that there are material differences between the "Unsafe Staffing Reports" filed after the Arbitrator's Award and the grievances that were the subject of the original Award itself. Thus, the MNA's asserted staffing violations must be resolved through the parties' bargained-for grievance and arbitration process. A civil confirmation action is not appropriate. Derwin, 719 F.2d at 491.

---

[5] In this connection, it is well to note that Arbitrator Stutz specifically declined to find that the CBA required any sort of fixed patient/nurse ratio, the maintenance of a permanent float pool, or the hiring of additional nurses. (See Compl. Exh. A, at 25, 29.) Rather, the Arbitrator found that the application of Section 18.07(D) of the contract required a case-by-case determination of the facts of each grievance. (Id. at 23.)

## CONCLUSION

For the reasons set forth above, Defendant North Adams Regional Hospital respectfully requests that its Motion for Judgment on the Pleadings or, in the Alternative, for Summary Judgment be allowed in its entirety.

Respectfully Submitted,

NORTH ADAMS REGIONAL
HOSPITAL

By its attorneys,

Robert B. Gordon (BBO #549258)
David C. Potter (BBO #644610)
Ropes & Gray LLP
One International Place
Boston, MA 02110-2624
(617) 951-7000

Dated: July 7, 2005

9756923_6                              -16-

<u>Certificate of Service</u>

I hereby certify that on July 7 , 2005, a true and correct copy of the foregoing document was served upon the attorney of record, Alan J. McDonald, Esq. and Mark A. Hickernell, Esq., McDonald & Associates, Suite 210, Cordaville Office Center, 153 Cordaville Road, Southborough, MA 01772, by Federal Express.

David C. Potter, Esq.

**EXHIBIT 1**

# North Adams Transcript

## NARH taken to court over nurse staffing
**By Karen Gardner**
**North Adams Transcript**

**Wednesday, June 22, 2005** - NORTH ADAMS -- Registered nurses at North Adams Regional Hospital on Tuesday filed a lawsuit in federal court, claiming the hospital has repeatedly violated a legal ruling in regard to safe staffing levels.

Over the past three months, 12 official grievances were filed and signed by at least 15 different nurses, according to David Schildmeier, spokesman for the Massachusetts Nurses Association. In the reports, filed between March 2 and June 1, the nurses detailed instances for which they said the hospital failed to meet safe staffing levels.

The reports also include instances of inappropriate placement of patients and staff, said Mary O'Connell, chairman of the nurses' union.

"It does continue and it is problematic," O'Connell said.

The nurses, represented by the union's attorneys, want the U.S. District Court in Springfield to order the hospital to abide by a February ruling, in which the arbitrator, Michael Stutz, ruled that the hospital violated the nurses' rights because "unsafe staffing was allowed by the hospital to occur without cropping admissions or transferring patients and without adding another nurse."

"It's a higher level of legal authority with greater power," said Schildmeier. "It's to say to them, 'You need to adhere to this arbitrator's ruling or be subject to contempt of court.'"

However, Dr. Bruce Nash, hospital president, said Tuesday that the recent grievances are without substance as the hospital is safely staffed and no patients or nurses are placed inappropriately. He expects Tuesday's legal action to go nowhere.

"The decision was specific to a set of staffing levels that were in effect at that time," Nash said.

It is the hospital's position, he said, that the current grievances have no relevance to the current situation.

"Our staffing today is the highest it's been since I've been president of the hospital," said Nash.

After several attempts to discuss the matter with hospital officials, Schildmeier said the nurses met with hospital attorneys and managers a few weeks ago to go over the meaning of the arbitration.

"They took a very technical response to the issue, saying that the arbitrator's ruling only referred to those nine instances on Three North [the medical-surgical floor] and that one area," said Schildmeier.

"Obviously, those instances were on that one floor, but the 'cease and desist' applies for any unsafe staffing report," he continued. "All but a few of the current grievances are not on that floor. They're on other floors of the hospital."

Recent grievances involve situations at the same-day surgery unit, the radiology department, the emergency department and the medical-surgical floor, he said.

What appears to be happening, said O'Connell, is that when the hospital begins to push the limit on the medical-surgical floor, "They're more or less protecting that unit."

In an effort to protect Three North, she said some patients are inappropriately placed in other units, making for an unsafe situation.

Nurses, too, O'Connell said, are being placed inappropriately as they are assigned to units and patients whose care they are not familiar with.

"There is no evidence to support that," Nash said. "Throughout health care, there are times when the burden of illness in the community causes more patients that need to be cared for, and as a consequence, when they're in the emergency room, there are patients that may need to wait several hours on rare occasions before a bed's available."

Nash said he views the hospital's nurses as trained professionals who are well skilled and able to care for the patients they are assigned to.

NARH is a role model for the commonwealth, said Robin Simonetti, a registered nurse and co-chairman of the nurses' local bargaining unit. "Because there is no other contract language in the state of Massachusetts that addresses when a nurse feels a situation is unsafe to say, 'Look, you need to have a plan in place to deal with that.'"

A bill will be brought to the state Legislature with regard to a standard for patient-to-nurse ratios. "And if we get the standard in place, it'll be that much better," Simonetti said.

Nash said he believes the effort on the part of the association is more of a reflection of the leadership at its headquarters in Canton than of the local nurses.

"It appears that this is part of their political agenda statewide," said Nash. "And that they are, in essence, using our nurses, in some respect, to move their agenda forward without any regard to the events that are happening at our hospital."

The situation is "unfortunate," he said. "It's money that could be used in taking care of patients and we're using it to pay lawyers."

"We are advocating for safe patient care," O'Connell said. "We want patients to know that, when they come to North Adams Regional Hospital for care, that they have a group of nurses who are fighting for their best interests to make it a very safe place."

**EXHIBIT 2**

MNA MASSACHUSETTS NURSES ASSOCIATION

News | Events | Legislation and Government | Safe Ratios | Single Payer | Labor Relations | Get a Union | Join
Nursing Practice | Health & Safety | Continuing Education | Career Services | Peer Assistance Program | Member F
About Us | Con

## NEWS
### The Latest Developments in the Massachusetts Nursing Environment

06.21.05

SEARCH

### North Adams Regional Hospital RNs File Suit in Federal Court to Enforce Legal Ruling on Staffing After Hospital Repeatedly Violates Arbitrator's Order Not to Admit "More Patients than Nurses Can Safely Care For"

**NORTH ADAMS, Mass.—**The registered nurses of North Adams Regional Hospital (NARH) represented by the Massachusetts Nurses Association (MNA) filed a lawsuit today in federal court seeking judicial enforcement of a recent arbitration order prohibiting the hospital from admitting "more patients than nurses can safely care for." *For a copy of the complaint, or the arbitrator's ruling, call David Schildmeier at 781.249.0430.*

The lawsuit, which was filed in Federal District Court in Springfield, claims the hospital continues to violate union contract language and a ruling issued in March by an independent arbitrator to "cease and desist" unsafe staffing practices at the hospital. The registered nurses' complaint is based on numerous instances over the last three months where the hospital ignored their objections and continued to inappropriately assign patients when the nurses felt it was unsafe based on their professional standards of practices. In other cases, the hospital assigned patients to nurses who were not properly oriented to deliver the care the patients required.

"It is a shame that we have to go to court to ensure that the hospital honors its legal commitment to provide appropriate patient care," said Mary McConnell, RN, chairperson of the nurses' local bargaining unit at NARH. "While our administrators stated publicly in the press that they were committed to abiding by our contract and the arbitrator's decision, they continue to inappropriately admit patients to specific units, thus jeopardizing the health of those patients."

The arbitrator's ruling drew national attention and was the first of its kind to deal with the issue of RN staffing and a hospital's obligation to assign patients based on registered nurses' ability to meet their professional practice standards.

In his 30-page decision, Arbitrator Michael Stutz ruled that the hospital violated the nurses' rights because "unsafe staffing was allowed by the hospital to occur without cropping admissions or transferring patients and without adding another nurse. Individual nurses were injured by having to work under unsafe conditions."

"We believe this ruling should have been a positive step towards making our hospital a model for patient safety," said Robin Simonetti, co-chair of the nurses' local bargaining unit. "We are taking this action to ensure that it is. No patient deserves to be cared for in an environment where their nurse can't deliver care safely."

■ Top St
■ News /
  □ 2004
  □ 2003
  □ 2002
  □ 2001
  □ 2000
  □ 1999

The complaint is based on a number specific breaches to the arbitrator's "cease and desist order" in the form of official unsafe staffing reports filed between March 2 and June 1, 2005, which occurred in the emergency department, the same day surgery unit, the radiology department and the medical/surgical unit. The medical surgical unit was the floor that was at the center of the original arbitration decision.

"Nurses file these reports only if they believe the patient assignment jeopardizes the safety of their patients," Simonetti explained. "In one instance, a nurse was transferred to another unit to monitor a patient undergoing a very specialized procedure for which she had no orientation, no experience, and with no hospital policy to provide her with any guidance."

According to the NARH nurses, the key solution to the problems at NARH is simple: have a sufficient number of registered nurses to allow staff to properly care for patients. In each of the incidents that led to the complaint, the hospital continued to admit and/or assign patients beyond the capacity of existing staff.

Now that the lawsuit has been filed, both sides will be required to file briefs on the matter. At some point in the coming weeks, attorneys will be called before a federal judge to argue their case, following which the judge will issue a ruling.

"Our first and only concern is the patients we care for," said McConnell. "They are the ones who have the most to lose if the hospital continues with their irresponsible practices."

###