UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MASSACHUSETTS NURSES ASSOCIATION,<br>　　　　Plaintiff,<br><br>v.<br><br>NORTH ADAMS REGIONAL HOSPITAL,<br>　　　　Defendant. | Civil Action No. 05-30145-MAP |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF
DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS
OR, IN THE ALTENRATIVE, FOR SUMMARY JUDGMENT**

Defendant North Adams Regional Hospital (the "Hospital" or the "Defendant") hereby submits this Reply Memorandum in Further Support of its Motion for Judgment on the Pleadings or, in the Alternative, for Summary Judgment. For the following reasons, and those set forth in its principal Memorandum, the Defendant's dispositive motion should be allowed in its entirety.

**INTRODUCTION**

The MNA concedes in its Opposition that the present action, a suit to confirm a labor arbitration award under the Labor Management Relations Act, 29 U.S.C. § 185, is controlled by the First Circuit's decision in Derwin v. General Dynamics Corp., 719 F.2d 484 (1st Cir. 1983). (Opp. at 4-5.) In so doing, the MNA acknowledges, as it must, the strong federal policy favoring the arbitration of labor disputes, and the strict and careful scrutiny that federal courts necessarily give to civil suits seeking enforcement of an arbitration award. (Id.) For this reason, the MNA also acknowledges that the confirmation of a labor arbitration award is appropriate, in the Union's own words, only in "unusual circumstances." (Id.) Having thus recognized that the bar is set extremely high to obtain judicial confirmation of the arbitral award at issue in this case (the

"Award"), the MNA nonetheless asserts – in conclusory fashion – that its enforcement action falls within the "unusual circumstances" described in Derwin. (Id.) The pleadings, however, make plain that it does not.[1] Because the presumptive rule of Derwin compels dismissal of the MNA's action, and because the facts of this case clearly do not qualify for the limited exception for confirmation that Derwin recognizes, the Hospital's motion should be allowed in its entirety.

I.   **THE HOSPITAL'S MOTION SHOULD BE GRANTED BECAUSE THE "UNUSUAL CIRCUMSTANCES" DESCRIBED IN DERWIN ARE NOT PRESENT IN THIS CASE.**

Under Derwin v. General Dynamics Corp., 719 F.2d 484, 491 (1st Cir. 1983), and its predecessor, Boston Shipping Ass'n v. International Longshoremen's Ass'n, 659 F.2d 1, 4 (1981), the "unusual circumstances" that must exist to permit confirmation of a labor arbitration award are as follows:

> Only where an arbitral award is both clearly intended to have a prospective effect and there is no colorable basis for denying the applicability of the existing award to a dispute at hand, will a court order compliance with the award rather than require the parties to proceed anew through the contract grievance procedure. . . . As we recently said, unless "it is beyond argument that there is no material factual difference between the new dispute and the one decided in the prior arbitration that would justify an arbitrator's reaching a different conclusion," the case must go to fresh arbitration rather than to the court for judicial enforcement. (Emphasis added.)

Thus, under Derwin and Boston Shipping, a court will order compliance with an arbitral award only if three conditions are present and undisputed: First, one of the parties to a collective bargaining agreement is currently violating that agreement. Second, there is "no colorable basis for denying the applicability of the existing [arbitration] award" to the current violations. And third, there is "no material factual difference" between the new violations alleged and the

---

[1] The MNA asserts in its Opposition that Jeff Stevens, the Hospital's Vice President for Human Resources, does not have sufficient first-hand knowledge to sign Defendant's Verified Answer. (Opp. at 8-9.) Although Defendant disputes the MNA's assertion, the Hospital has herewith filed a First Amended Verified Answer signed by Billie Allard, RN, MS, the Vice President of Patient Care at the Hospital. Ms. Allard undeniably has first-hand knowledge of all of the matters pleaded by the Hospital in its First Amended Verified Answer.

violations found in the prior arbitration. See supra. Derwin makes clear that if there are any genuine disputes regarding whether one or more of the foregoing conditions are met, then the Award cannot be confirmed judicially and the parties must return to contractual grievance and arbitration procedures to resolve their dispute. As explained below, none of the conditions permitting confirmation under Derwin are satisfied in the present case.

### A. THE PARTIES DISPUTE WHETHER THE HOSPITAL IS CURRENTLY VIOLATING THE COLLECTIVE BARGAINING AGREEMENT.

The Hospital asserts in its pleading that it is not currently violating the parties' collective bargaining agreement (the "Agreement"). Article 18.07D of the Agreement provides as follows: "The hospital will only keep and admit the number of patients that registered nurses can safely care for. The hospital will take measures such as adding nurses, stopping admissions or other measures to ensure that this occurs." (Compl. at ¶ 7.) In his opinion, Arbitrator Stutz found that, on nine occasions in May and June of 2002, the Hospital breached Article 18.07D in respect to the level of nurse staffing on the medical surgical pediatric unit of the Hospital known as "Three North" or "3N." (Compl. Ex. A, at 28.) Arbitrator Stutz concluded that, for the Hospital to comply with Article 18.07D, "it must administer staffing, patient load and acuity" in a manner that assures that nurses are not forced to work under the same conditions again. (Id. at 25.) In so ruling, Arbitrator Stutz recognized that the Hospital has numerous tools available to enforce such a system, including adding staff, capping admissions, and transferring patients out of the Hospital. (Id.) Arbitrator Stutz expressly declined, however, to prescribe a more explicit corrective (i.e., the hiring of additional nurses, the establishment of a float pool, or the imposition of a rigid patient/nurse ratio), asserting in his Award that such an "extraordinary remedy" might not be needed to address "something that transpired nearly three years ago and might not be continuing today." (Id. at 29.)

Since the time of the grievances that were the subject of Arbitrator Stutz's Award, and subsequent to that Award, the Hospital has taken numerous steps to ensure the adequacy of its site staffing. Indeed, Arbitrator Stutz himself recognized that, since the time of the grievances, the Hospital has raised the standard of patient care hours (i.e., the total number of hours worked in a twenty-four hour period by Registered Nurses (RN's), Licensed Practical Nurses (LPN's) and Certified Nursing Assistants (CNA's) divided by the total patient census) from 5.5 care hours to 6.2 care hours. (Id.) Moreover, since 2002, the Hospital has raised its actual average patient care hours on Three North from 6.35 to 8.64 patient care hours per week. (First Amended Verified Answer ¶ 14.) In addition, the Hospital has added a total of 260 RN nursing hours per week to Three North, added 24 additional LPN hours per week on Three North, added 72 additional CNA hours per week on Three North, established a committee to develop a system for identifying patient acuity to be used for staffing decisions, formed a task force consisting of a cross-section of nurses on Three North to consider new models for the delivery of patient care, purchased additional equipment for Three North, and reorganized the location of supplies on the unit to improve overall care delivery. (Id.) In short, the Hospital has taken substantial steps to comply with Arbitrator Stutz's Award, has done nothing to reject or repudiate the Award, and has not violated and is not violating Article 18.07D of the Agreement. (Id.)

To be sure, the MNA disagrees, and asserts in several places in its Opposition that there is a genuine dispute between the parties as to whether the steps taken by the Hospital are sufficient to assure adequate staffing or whether the Hospital is continuing to violate the Agreement and/or the Award. (Opp. at 4-7.)[2] Under the holding of Derwin, however, the very existence of such disputes between the parties forecloses the remedy of confirmation; for these

---

[2] It bears emphasis, however, that the MNA has not filed a single grievance under the collective bargaining agreement to challenge Hospital staffing since the issuance of Arbitrator Stutz's Award. (First Amended Verified Answer at ¶ 16.)

9789168_5 - 4 -

are matters to be addressed and resolved in arbitration, "where the evidence [might] justify an arbitrator's reaching a different conclusion" from the one adopted by Mr. Stutz. Derwin, 719 F.2d at 491. The Complaint must, therefore, be dismissed

### B. THE PARTIES DISPUTE WHETHER ARBITRATOR STUTZ'S AWARD APPLIES TO ALLEGED VIOLATIONS OF THE AGREEMENT OCCURRING OUTSIDE OF THREE NORTH.

The parties further disagree about whether the Stutz Award even applies to the present staffing disputes between the MNA and the Hospital. Since Arbitrator Stutz's Award, several "Unsafe Staffing Reports" have been filed with the Hospital. (Compl. ¶16; First Amended Verified Answer ¶ 16.) The MNA, although making frequent reference to the existence of these reports, has failed to attach copies of the reports themselves to any of its Court filings, or even to explain in any detail the specific staffing violations these Reports allege. The Hospital has accordingly attached the reports to its First Amended Verified Answer. (First Amended Verified Answer, Exh. 4.) It is clear from these reports why the MNA has chosen to rely on them in only a cursory fashion. All but one of the reports concern claimed staffing violations in areas of the Hospital other than Three North. The Hospital submits that the cease and desist order contained in Arbitrator Stutz's Award governs only the staffing in place on Three North, the sole unit of the Hospital at issue in the nine grievances that were heard.

The MNA takes the position that the Award applies to alleged staffing violations in all areas of the Hospital; although the Union grudgingly acknowledges the Award's ambiguity on this point, and argues against the Hospital's reading of Arbitrator Stutz's ruling. (Opp. at 7.) Under Derwin, however, such a colorable dispute concerning the reach and application of an arbitral order must be resolved through the parties' agreed-upon grievance and arbitration procedures, and is not properly decided by a court under the guise of a confirmation proceeding. Derwin, 719 F.2d at 490 ("[D]isputes involving the . . . application of prior arbitral labor awards

are themselves proper subject for arbitration."). This constitutes an adequate and independent ground for dismissing the MNA's action.

### C. THE NEW CONTRACT VIOLATIONS ALLEGED BY THE MNA ARE MATERIALLY DIFFERENT FROM THE VIOLATIONS FOUND IN THE PRIOR ARBITRATION.

Finally, even assuming that the Hospital were currently violating Article 18.07D and that the Stutz Award applied to all of the new "Unsafe Staffing Reports," neither of which is the case, there are numerous and material factual differences between the new violations claimed by the MNA and the violations found in the prior arbitration. Under Derwin and Boston Shipping, this fact is fatal to the Union's confirmation claim.

In reaching his conclusion that the Hospital had violated staffing requirements contained in the Agreement, Arbitrator Stutz considered in detail the conditions that prevailed on Three North during the nine shifts at issue in 2002. These conditions included the patient census at the time; staffing levels of RN's, LPN's and CNA's; patient care hours for the shifts; the overall acuity level of patients on the shifts; the specific acuity level of particular patients; the number of admissions and discharges; the number of patient discharges with teaching required; the experience level of the nurses on duty; whether additional nurses and/or staff were added during the given shifts; whether patients were transferred out of Three North during the shifts; and whether unit admissions were capped during the shifts. (Compl. Exh. A, at 10-18, 25-28.)

The specific facts which Arbitrator Stutz found to exist on the nine shifts on Three North were plainly material to his conclusion that, based upon these conditions, the Hospital had violated Article 18.07D by not taking corrective actions such as adding nurses, halting admissions or taking other measures to ensure that the level of staffing was adequate to meet the needs of patients. Arbitrator Stutz recognized, however, that the contractually mandated level of staffing will depend on a variety of facts and circumstances and, therefore, that alleged staffing

violations must be considered on a case-by-case basis. This is evidenced by the opinion's detailed rehearsal of the facts presented in each grievance, and by the fact that Arbitrator Stutz specifically rejected any one-size-fits-all remedy such as the establishment of a fixed patient/nurse ratio, requiring the maintenance of a float pool, or prescribing the hiring of a specific number of additional nurses. (Id. at 25, 29.)

In light of the foregoing, it is beyond argument that the pleadings establish the existence of myriad and material factual differences between the four new Unsafe Staffing Reports filed at the Hospital following Arbitrator Stutz's Award and the grievances that were the underlying subject of that Award some three years ago. For example, three of the four Unsafe Staffing Reports involve, among other things, different patient censuses, different levels of RN, LPN and CNA staffing, different care hour ratios, different acuity levels of patients, different numbers of admissions and discharges during the shifts in question, different levels of experience in respect to the nurses on duty, and differences in whether nurses and/or other staff were added during the shifts, whether patients were transferred out of the unit during a shift, and whether admissions were capped at any point during the shift. (First Amended Verified Answer, ¶¶ 16 & Exh. 4.) These facts are plainly material, and all of them vary from one area of the Hospital to the next and even from one shift to another within a particular unit. As to the fourth Unsafe Staffing Report, dated June 2, 2005, it is completely unrelated to the level of nurse staffing at all, and instead concerns an RN who claimed she was given an assignment for which she was not adequately trained. (Id.) No remotely comparable issue was addressed in the Stutz Award.

In point of fact, the MNA itself acknowledges such material factual differences when it states in its Opposition that "[s]ome or all of these instances of unsafe staffing share substantial material factual identity with the instances reviewed by Stutz," and that "some or all of the new instances of unsafe staffing are sufficiently similar to the instances cited in the Stutz Award to

qualify for confirmation." (Opp. at 3, 6.) Such tapered allegations do not satisfy the test of Derwin, which requires that it be "beyond argument that there is no material factual difference between the new dispute and the one decided in the prior arbitration." See Derwin, 719 F.2d at 491 (emphasis supplied). By the MNA's own implicit admission, at least some of the new instances of alleged unsafe staffing concern facts that are not substantially similar to the instances reviewed by Arbitrator Stutz. And, according to the MNA, none of the new instances of unsafe staffing concern facts that are entirely similar to those at issue in the Stutz Award. Thus, the pleadings make clear that, despite an imaginative effort, the MNA cannot fit its lawsuit within the "unusual circumstances" Derwin requires for a federal court to confirm a labor arbitration award. Instead, the MNA's action presents the more commonplace paradigm, whereby a party to a collective bargaining agreement must abide by its contract and resolve disputes through agreed-upon grievance and arbitration remedies.

## II.  THIS COURT CAN, AND SHOULD, RESOLVE THIS CASE ON THE PRESENT MOTION.

Recognizing that any rational application of Derwin compels a dismissal of its lawsuit, the MNA suggests in its Opposition that it should be permitted to amend its Complaint or file an additional summary judgment memorandum and statement of material facts in dispute. (Opp., at 6 n.3, 8-9.) Plaintiff's argument is without merit, for an amended complaint in these circumstances would be futile. The pleadings make clear that there are substantial disputes between the parties regarding the presently alleged contract violations, the applicability of the Award to those violations, and the similarity of the claimed violations to the three year-old ones under review by Arbitrator Stutz. Unless the MNA intends to disclaim those disputes, which would be contrary to everything it has represented to the Court thus far, its confirmation claim fails all three parts of the test of Derwin and must be dismissed.

If there is one thing that is genuinely undisputed in this case, it is this: there are disputes of material fact between the parties. Unlike the typical dispositive motion, however, <u>Derwin</u> holds that the presence of such disputes dictates that judgment be <u>granted</u> against the confirmation claim and in the movant's favor. Allowing the MNA to submit a statement of disputed material facts would do nothing more than reinforce what the Court already knows to be unalterably true: confirmation of the Award is not allowed under <u>Derwin</u>, because there is, at the very least, a colorable basis for denying the applicability of the Award to the disputes at hand. Federal law compels that such disputes be decided in grievance arbitration, not in court.

## CONCLUSION

For all of the foregoing reasons, and those set forth in its principal Memorandum, Defendant submits that its Motion for Judgment on the Pleadings or, in the Alternative, for Summary Judgment should be allowed in its entirety.

Respectfully Submitted,

NORTH ADAMS REGIONAL HOSPITAL

By its attorneys,

*/s/ Robert B. Gordon*
*/s/ David C. Potter*

Robert B. Gordon (BBO #549258)
David C. Potter (BBO #644610)
Ropes & Gray LLP
One International Place
Boston, MA 02110-2624
(617) 951-7000

Dated: August 15, 2005

- 10 -

## Certificate of Service

I hereby certify that on August 15, 2005, a true and correct copy of the foregoing document was served upon the attorneys of record, Alan J. McDonald, Esq. and Mark A. Hickernell, Esq., McDonald & Associates, Suite 210, Cordaville Office Center, 153 Cordaville Road, Southborough, MA 01772, by Federal Express.

_____
Robert B. Gordon, Esq.