UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MASSACHUSETTS NURSES ) <br> ASSOCIATION, ) <br> Plaintiff ) <br> ) <br> ) <br> v. ) <br> ) <br> ) <br> NORTH ADAMS REGIONAL ) <br> HOSPITAL, ) <br> Defendant ) | Civil Action No. 05-30145-KPN |

MEMORANDUM AND ORDER WITH REGARD TO DEFENDANT'S
MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE
ALTERNATIVE, FOR SUMMARY JUDGMENT (Document No. 7)
October 24, 2005

NEIMAN, U.S.M.J.

Massachusetts Nurses Association ("Plaintiff"), a labor organization representing a bargaining unit of registered nurses ("RNs") at North Adams Regional Hospital ("Defendant"), brings this one-count action, pursuant to 29 U.S.C. § 185, seeking confirmation of a labor arbitration award. Defendant argues that Plaintiff's complaint is an inappropriate attempt to circumvent the grievance and arbitration process prescribed by the parties' collective bargaining agreement (hereinafter the "CBA") and federal law. Accordingly, Defendant has filed a motion for judgment on the pleadings (*see* Fed. R. Civ. P. 12(c)) or, in the alternative, for summary judgment (*see* Fed. R. Civ. P. 56).

The parties have consented to this court's jurisdiction pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. For the reasons provided below, Defendant's motion will

be allowed.

## I. BACKGROUND

As required by Rule 12(c), "the trial court must accept all of [Plaintiff's] well-pleaded factual averments as true and draw all reasonable inferences in its favor." *Rivera-Gomez v. de Castro*, 843 F.2d 631, 635 (1st Cir. 1988) (citations omitted).[1] Accordingly, the following facts are taken either directly from Plaintiff's complaint, the arbitration award attached thereto, or the CBA which is specifically referred to and relied upon in the complaint and attached to Defendant's First Amended Verified Answer. *See Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001) (noting that such documents may properly be considered on a Rule 12(b)(6) motion without converting it into motion for summary judgment). *See also McIntyre v. United States*, 336 F. Supp. 2d 87, 96 (D. Mass. 2004) (noting that under *Collier v. City of Chicopee*, 158 F.3d 601, 602 (1st Cir. 1998), "motions for judgment on the pleadings under Fed. R. Civ. P. 12(c) warrant the same treatment as motions to dismiss under Fed. R. Civ. P. 12(b)(6)").

Between April 1, 2001, and March 31, 2004, the parties were governed by a collective bargaining agreement. (Complaint ¶ 5.) The pertinent terms of that agreement continue in a successor three-year contract which took effect on April 1, 2004. (*Id.*) Like most such agreements, the CBA contains detailed provisions for grieving and arbitrating disputes. (*Id.* ¶ 6.)

---

[1] While Defendant seeks summary judgment as an alternative remedy, the court has only evaluated the motion as seeking judgment on the pleadings pursuant to Rule 12(c).

As relevant here, the CBA also contains a provision entitled "Standards of Nursing Practice." This provision, entitled "Article 18.07", provides as follows:

> A. [Defendant] shall promulgate and enforce policies, rules, and regulations to ensure that applicable standards of nursing practice (e.g., E.N.A. Critical Care) are established and carried out so that safe and effective nursing care is provided to patients.
>
> B. [Defendant] shall ensure that written policies, procedures and protocols are readily available to nursing staff.
>
> C. [Defendant] shall ensure that organizational policies and procedures, job descriptions and standards of nursing practice conform to . . . all . . . federal and state laws and regulations related to the practice of nursing.
>
> D. *[Defendant] will only keep and admit the number of patients that registered nurses can safely care for. [Defendant] will take measures such as adding nurses, stopping admission or other measures to ensure that this occurs.*

(*Id*. ¶ 7 (emphasis added).)

Between May 6 and June 2, 2002, RNs employed by Defendant filed nine Unsafe Staffing Reports ("USRs"). (*Id*. ¶ 8.) These reports varioulsy alleged that staffing on the medical surgical pediatric unit (hereinafter "Three North") was inadequate and unsafe due to factors such as patient census, patient acuity and staffing levels. (*Id*.) The USRs were converted into union grievances alleging violations of subsection D of Article 18.07 and presented to Arbitrator Michael Stutz over nine days between October of 2003 and September of 2004. (*Id*. ¶ 9.)

The parties stipulated that the two issues to be decided by Arbitrator Stutz were first, "Did the Hospital violate the collective bargaining agreement as alleged in any or

3

all grievances number one, two, three, four, five, six, seven, ten and eleven?" and second, "If so, what shall the remedy be?" (*Id.* ¶ 10.)[2]  On February 21, 2005, Arbitrator Stutz issued an Opinion and Award, in which he found that Defendant had violated the CBA as alleged in all nine grievances, and ordered the following remedies:

> a) [Defendant] shall cease and desist violating Article 18.07 of the Agreement;
>
> b) [Defendant] shall pay [Plaintiff] an amount of money equal to the pay of one RN for each of the nine shifts grieved; and
>
> c) [Defendant] shall pay the RN's [sic] working the nine shifts time and one half for those shifts, i.e. the difference between time and one half pay and what they were actually paid.

(*Id.* ¶¶ 11-13.)

It is undisputed that Defendant has complied with paragraphs (b) and (c).  (See *id.* ¶ 14; Document No. 11, hereinafter "Plaintiff's Brief," at 2.)  Plaintiff contends, however, that Defendant has not complied with the cease and desist order articulated in paragraph (a).  (Complaint ¶ 14.)  According to Plaintiff, "[b]etween March 2 and April 22, 2005, RNs employed by [Defendant] have identified an additional set of violations of Article 18.07 of the CBA and have filed [USRs] describing those violations." (*Id.* ¶ 16.)  Moreover, Plaintiff observes, Defendant has not sought to vacate Arbitrator Stutz's award.  (*Id.* ¶ 15.)  In contrast, Plaintiff has brought the instant action seeking "confirmation" of the award.  (*Id.* (Count One).)  According to Plaintiff, "Defendant has failed to Comply with [the] order to Cease and Desist from violating Article 18.07" and,

---

[2] These grievance numbers corresponded with the nine separate USRs.

therefore, requests that the award "be confirmed and enforced." (*Id.* ¶¶ 18, 19.)

## II. DISCUSSION

"[T]he court may not grant a defendant's Rule 12(c) motion unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Rivera-Gomez*, 843 F.2d at 635 (citations and internal quotation marks omitted). To that end, Defendant argues that Plaintiff's complaint is an inappropriate attempt to circumvent the grievance and arbitration process prescribed by the CBA and federal law and, therefore, ought to be dismissed. For the reasons described below, the court essentially agrees with Defendant and, accordingly, will allow the motion for judgment on the pleadings.

Both parties rely on *Derwin v. Gen. Dynamics Corp.*, 719 F.2d 484 (1st Cir. 1983), in support of their respective positions. Similar to the situation here, *Derwin* involved an attempt by a union to have the court "confirm" an arbitration award. The defendant there viewed the union's action "as the first step in a clever ploy to subvert the arbitral process," *i.e.*, as a way to use the court's imprimatur as a springboard for future contempt proceedings. *Id.* at 490-91. Here, as well, Defendant postulates that Plaintiff, if granted judicial "confirmation" of Arbitrator Stutz's award, "will return to the Court seeking a contempt ruling any time it thinks that [Defendant] is in violation of Article 18.07 of the CBA, regardless of how tangentially related such claimed violations may be to the factual circumstances at issue in the Arbitrator's Award." (Document No. 8 at 8.) Plaintiff, on the other hand, asserts that *Derwin* permits confirmation claims in appropriate circumstances and that this is such a circumstance. For its part, the court

5

agrees that judicial "confirmation" of an arbitration award is occasionally possible under *Derwin*, but concludes that the standard for the invocation of such confirmation has not been met here.

The court begins with the well-settled principle, affirmed by the First Circuit in *Derwin*, that where "parties have committed to arbitrate disputes over the meaning of their collective bargaining agreements, established labor policy significantly restricts the role of the federal courts." *Id.* at 491 (citing, *inter alia*, *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593 (1960)). "In recognition of this limited role," *Derwin* continued, "the courts have often declined to rule that an arbitral award is binding in a later, factually similar context, reasoning that the precedential effect to be accorded a past award is a matter for the arbitrator." *Id.* (citing cases). Further, *Derwin* explained, the courts "have carefully scrutinized suits to 'enforce' past awards where the facts suggest that the nominal enforcement proceeding is, in truth, an attempt to extend the award to a new, previously unresolved dispute." *Id.* "For example," the court continued, "in *United Paperworkers, Local 675 v. Westvaco Corp.,* 461 F. Supp. 1022 (W.D. Va.1978), an arbitrator had directed the employer to reexamine its seniority practices with respect to certain jobs. When a dispute arose as to the result of the reexamination, the court held that the grievance procedure was the proper mode for resolving the conflict." *Id.* (also citing *International Ass'n of Machinists Lodge No. 1893 v. Aerojet-General Corp.*, 263 F. Supp. 343, 347 (C.D. Cal. 1966) (denying enforcement where dispute at the heart of the controversy was not presented to arbitration); *District 50, United Mine Workers v. Revere Copper & Brass, Inc.*, 204 F. Supp. 349, 352 (D.

6

Md. 1962) (denying enforcement where previous arbitral award stated general rules for application by the parties and therefore required further interpretation and arbitration)).

As Plaintiff notes, however, *Derwin* did not entirely shut the door to confirmation proceedings. It did, however, establish the following strict standard:

> Only where an arbitral award is both *clearly intended to have a prospective effect* and there is *no colorable basis for denying the applicability of the existing award to a dispute at hand*, will a court order compliance with the award rather than require the parties to proceed anew through the contract grievance procedure.

*Id.* (citations omitted; emphasis added). Thus, for Plaintiff to be allowed to pursue this confirmation action -- instead of "proceed[ing] anew through the contract grievance process" -- it must be able to show that Arbitrator Stutz's award is "clearly intended to have a prospective effect" and that there exists "no colorable basis for denying the applicability of the existing award to [the] dispute at hand."

The court will assume that the subject award was "clearly intended to have a prospective effect." That is the very nature of a "cease and desist" order. *See Puerto Rico Maritime Shipping Auth. v. Fed. Maritime Comm'n*, 75 F.3d 63, 65 (1st Cir. 1996) (characterizing cease and desist orders as "prospective relief"); Black's Law Dictionary (7th ed.) (defining "cease and desist order" as an order "prohibiting a person from continuing a particular course of conduct"). However, in the court's opinion, Plaintiff is unable to show that there exists "no colorable basis for denying the applicability of the existing award to [the] dispute at hand." As the First Circuit explained, "unless 'it is beyond argument that there is no material factual difference between the new dispute

and the one decided in the prior arbitration that would justify an arbitrator's reaching a different conclusion,' the case must go to fresh arbitration rather than to the court for judicial enforcement."  *Derwin*, 719 F.2d at 491 (quoting *Boston Shipping Ass'n v. Int'l Longshoremen's Ass'n*, 659 F.2d 1, 4 (1st Cir. 1987)).  Here, in the court's estimation, there is certainly an "argument" -- or at least a "colorable basis" to argue -- that the dispute pursued in this action is new and materially different from the prior arbitration.

As an initial matter, Defendant has made a convincing argument that the prior arbitration targeted specific grievances with respect to the Three North unit only.  The very way the parties framed the issue for the arbitrator -- *i.e.*, whether Defendant "violate[d] the [CBA] as alleged in any or all of the grievances number one, two, three, four, five, six, seven, ten and eleven" -- was a clear reference to the Three North USRs.  (Complaint, Exhibit A at 2.)  Arbitrator Stutz's Opinion and Award also confirmed in its introduction that the arbitration concerned Plaintiff's "allegations of unsafe staffing *in the medical surgical pediatric unit of the hospital known as 'Three North' or '3N.'*"  (*Id.* (emphasis added).  See also *id.* at 23.)  Moreover, the thirty-page Opinion and Award discussed only the nine specific events on Three North.  True, the "cease and desist" order mentioned "Article 18.07," a provision that obviously applies hospital-wide.  But it is amply clear from even the most cursory review of the Opinion and Award that Arbitrator Stutz was only seeking to remedy the past conditions that had existed on Three North itself.  In fact, the very last line of the Opinion and Award states that "the most important goal of remedy in this case is [to] assure that there is no repetition of the circumstances that prevailed on at least nine occasions in May and June 2002 *on*

*Three North.*" (*Id.* at 29-30 (emphasis added).)

Defendant has made an equally strong argument that many of the "new" USRs referred to in Plaintiff's complaint -- *i.e.*, those occurring "[b]etween March 2 and April 22, 2005" -- do *not* pertain to Three North. While this is not entirely apparent from the complaint itself, Defendant's verified answer asserts that, in fact, the new USRs "with only one exception, cover areas of the Hospital other than Three North." (Defendant's First Amended Verified Answer ¶ 16.) Plaintiff also conceded as much at oral argument.[3] In addition, Plaintiff's Brief, by contending that the cease and desist order applies hospital-wide, suggests that the new USRs did not originate on Three North. (See Plaintiff's Brief at 7 ("The Hospital argues that these recent instances of unsafe staffing do not fall within the ambit of the Stutz Award because 'most, if not all, of these recent reports concern the level of staffing in areas of the Hospital other than the Medical Surgical unit, the area at issue in the Arbitrator's Award.' . . . This argument relies upon an unreasonable reading of the cease and desist order, namely that it applies only to the Medical Surgical unit.").)

Defendant's argument that the present dispute is materially different from the previous arbitration is also reflected in the award itself. There, Arbitrator Stutz considered testimony that, as early as May of 2003, "patient care hours used to determine staffing have been raised"; "[r]ecently a 32-hour RN and a 24-hour RN were

---

[3] Plaintiff acknowledged at oral argument that there are now at least ten post-arbitration USRs, that Defendant has put four of them before the court as exhibits to its First Amended Verified Answer, and that three of those four (and perhaps all of the remaining six) occurred in other units of the hospital.

9

added to the 7-3 shift, and a 24-hour RN was added to the 3-11 shift"; Defendant is "considering reducing the number of patients assigned to the charge nurse"; and "a committee has been assembled to develop a system for identifying patient acuity to be used for staffing decisions." (Complaint, Exhibit 1 at 18.)  According to Arbitrator Stutz, "the unsafe situations that occurred in the past, now long ago, . . . may not be continuing today."  (*Id.* at 29.)

Finally, the court takes judicial notice of two news items which strengthen Defendant's contention that the earlier arbitration involved only Three North and is, therefore, materially different from the instant dispute which pertains to other areas of the hospital.[4]  The first is an article from the North Adams Transcript dated June 22, 2005, the day after Plaintiff filed the instant action.  In it, Plaintiff's spokesperson is quoted as saying "All but a few of the current grievances are not on [the medical-surgical] floor.  They're on other floors of the hospital."  (Defendant's Brief, Exhibit 1.)  A similar sentiment is expressed in a June 21, 2005 press release from Plaintiff's own web-site, to wit, that "[t]he medical surgical unit was the floor that was at the center of

---

[4] This court is generally skeptical of looking beyond the pleadings at the Rule 12(c) stage.  However, when the court asked at oral argument whether it could take judicial notice of the two news items without converting the motion into one for summary judgment, Plaintiff confirmed that they are "out there" and "[i]f you think [they are] important to your decision, sure."  *See also Alternative Energy*, 267 F.3d at 33 (at motion to dismiss, court may properly consider "documents the authenticity of which are not disputed by the parties[,] . . . official public records[,] . . . documents central to [Plaintiff's] claim . . . [and] documents sufficiently referred to in the complaint"); *Levitt v. Bear Stearns & Co.*, 222 F. Supp. 2d 312, 321 (E.D.N.Y. 2002) (collecting cases describing circumstances under which courts may properly consider news articles at motion to dismiss stage), *vacated and remanded on other grounds*, 340 F.3d 94 (2nd Cir. 2003).  Here, the news items merely strengthen the court's conclusion that the pleadings do not allow Plaintiff to proceed.

the original arbitration decision" whereas "[t]he [new] complaint is based on a number of . . . unsafe staffing reports filed between March 2 and June 1 [sic], 2005, which occurred in the emergency department, the same day surgery unit, the radiology department and the medical/surgical unit."  (*Id.*, Exhibit 2.)

In summary, the court believes that there is a "colorable," indeed a very strong, argument that there exists a "material factual difference between the new dispute and the one decided in [the] prior arbitration."  As such, the cease and desist order arguably does not apply to the new circumstances.  At the very least, then, "the precedential effect to be accorded [the] past award is a matter for the arbitrator," not for this court.  *Derwin*, 719 F.2d at 491 (citing *Courier-Citizen Co. v. Boston Electrotypers Union No. 11*, 702 F.2d 273, 280 (1st Cir. 1983); *Westinghouse Elevators of P.R., Inc. v. S.I.U. de Puerto Rico*, 583 F.2d 1184, 1186-87 (1st Cir. 1978)).  Accordingly, the court has little choice but to allow Defendant's motion for judgment on the pleadings.

### III. CONCLUSION

For the reasons stated, Defendant's motion, construed as a motion for judgment on the pleadings, is ALLOWED.

IT IS SO ORDERED

DATED: October 24, 2005

   /s/ Kenneth P. Neiman
KENNETH P. NEIMAN
U.S. Magistrate Judge